## Case No. 7,499.

JONES et al. v. UNITED STATES.

[5 Cranch. C. C. 647.] [1]

Circuit Court, District of Columbia. March Term, 1840.

[1] [Reported by Hon. William Cranch, Chief Judge.]

Mr. Key and Mr. Addison, contrâ.

Mr. R. J. Brent and Mr. Hoban, for appellants.

CRANCH, Chief Judge, after reciting the counts of the indictment (THRUSTON, Circuit Judge, absent).

At the trial of the defendants Lucretia Clarke and Harriet Jones (the other defendant, William H. Brewster, not having been taken), the judge, at the prayer of the district attorney of the United States, instructed the jury,

1. "That if the jury believe the testimony in the foregoing statement, and also believe, from the evidence, that the representations of the prisoners to Williams were, in part, the inducement with Williams to buy the woman, then the traversers are guilty," meaning no doubt, guilty upon this indictment. The statement of testimony referred to, does not appear among the papers submitted to the court, nor is there any transcript of the record. We ought not to be called upon to decide cases in error, until the record is fully made up and present-

ed to the court. But however the statement of the testimony may be, it is not sufficient, in any case, for the jury to find testimony. They must not only believe the testimony to be true, but they must find the facts which the testimony is intended to prove. The jury ought not to find the defendants guilty, unless they should, from the evidence, find all the facts necessary to constitute the offence charged. Whatever may have been the statement of the testimony, therefore, we think the instruction was wrong. We think it wrong, also, because the indictment does not charge these defendants with any offence under the penitentiary act. No person is guilty under that statute, unless he has "obtained" something by his false pretence. This indictment does not charge these defendants with having obtained any thing by their false pretence; and, therefore, they are not 'guilty upon it. The indictment may be, and perhaps is, a good indictment against Brewster, who is alone charged with having obtained the fruit of the cheat. If it should be said, as I understand it to have been said in argument, that if three join in making a false pretence, and one of them obtains the money, &c., all may be said to have obtained it; the answer is, that then the indictment should have averred that they all obtained it; not that one only obtained it, as stated in this indictment. If these defendants did every thing charged against them in the indictment, and nothing more, they cannot be guilty, because it does not charge them with the offence described in the statute, which punishes those only who obtain the fruit of the fraud.

2. The judge refused to instruct the jury "1st. That in order to convict the prisoners" (that is, these two defendants, Lucretia and Harriet) "the jury must believe, from the evidence, that they received the money and check charged in the indictment to have been obtained by false pretences;" and "2d. That in order to receive the same, they must be present when it was given." If a person, under the statute, could "obtain" the money, &c., without personally receiving it into his own hands, the judge correctly refused the instruction. A person who participates in the fraud, and who obtains the benefit of the money, &c., may well be said to obtain the money within the meaning and mischief of the statute. We think there was no error in refusing this instruction.

3. The judge, also, refused to give the following instruction: "That if the jury believe, from the evidence, that the specific twenty bank-notes, charged in the third count of the indictment, as obtained by the prisoners, by the false pretences in the said count alleged, were never in the possession of the said party, whose property and money they are charged to be, then the prisoners are entitled to an acquittal." We think the judge did not err in refusing this instruction. 1. Because that count does not charge that these defendants obtained those bank-notes. 2. Because the bank-notes are not averred to be the goods, or chattels, or money, or property, or bank-notes of the said Thomas Williams. It is true that this count charges that Williams gave the bank-notes to Brewster, in payment for Lucretia; but it does not directly aver that they were the property of William, or were ever in his actual possession. If it had averred that they were the bank-notes of Williams, we doubt whether it would have been necessary to prove them to have been in his actual possession; although in Walsh's Case, 2 Russ. Crimes, 113, 117, all the English judges decided that the notes which the prisoner had received upon the prosecutor's check, could not be called the prosecutor's notes, because he never had possession of them. Upon this point, however, we do not think it necessary to give an opinion.

4. The judge also refused to give the following instruction: "That all the precedent declarations and doings of the said Jones, Brewster, and Clarke, in the said evidence in this case averred, are merged in the subsequent bill of sale and warranty of Brewster, and that the prisoners, upon this charge, are entitled to an acquittal." The evidence referred to does not appear in this case, and therefore this court cannot say that the judge erred in refusing this instruction, for it is a matter of evidence to be left to the jury, who will draw their own inferences from that and all the other evidence in the cause. The prayer is not predicated upon any supposed finding of the jury; and, for that reason, also, was properly refused.

5. The judge also refused to give the following instruction: "That if the jury believe, from the evidence aforesaid, that after the conversations and doings of the prisoners, and previous to the consummation of the bargain between Williams and Brewster, the said Williams received from the said Brewster alone, the bill of sale given in evidence, then there is no evidence that the said Williams gave credit to the assertions of the prisoners, and they are entitled to an acquittal." The evidence referred to is not before this court, and, therefore, we cannot say that the judges erred in refusing the instruction. But if the false pretences and the subsequent purchase were proved to the satisfaction of the jury, they might in the absence of all contradictory evidence, infer that the purchase was made upon the faith of such pretences. The taking of a warranty, if proved, is a fact also for the consideration of the jury; and the inferences therefrom are to be made, or not, by the jury, according to the preponderance of the evidence upon their minds; and when there is evidence on both sides, the court cannot say there is no evidence on one side, but should leave the matter to the jury. Upon such evidence the court cannot say that the prisoners were en-

titled to an acquittal. We think the judge did not err in refusing this instruction.

6. The judge also refused to give the following instruction: "That if the jury believe, from the evidence aforesaid, that the check was given to Brewster by Williams, in the absence of the prisoners, they are entitled to an acquittal, notwithstanding said Brewster may have obtained said check, through the previous countenance and management of the prisoners." This prayer supposes, that if the prisoners were not present when Williams gave the check to Brewster, they were entitled to an acquittal, although they should have participated in the proceeds of the check; and whatever other evidence there might have been. If these defendants had been charged, in the indictment, with having obtained the check jointly with Brewster, we should not have supposed it necessary to charge or to prove that the three were all present at the time of its being given by Williams to Brewster. We think it would have been sufficient to prove that these defendants obtained their share of it, or of its proceeds, through Brewster. But these defendants are not charged with obtaining any part of the check or its proceeds; and the evidence referred to in the prayer, is not before this court. The prayer, therefore, appears to us to be irrelevant; and for that reason, as well as because, if relevant, it ought not to have been granted, we think the judge did not err in refusing it.

7. The judge also refused the following instruction: "That the mere exhibition of Letty Clarke to the said Williams accompanied with the assertion that she was a slave and willing to be sold, is no false pretence, but only a lie; even if the jury should believe she was, at the time, free." This prayer is not predicated on any supposed finding of the jury. It is therefore abstract; and does not, upon its face, appear to be applicable to the cause on trial. But under the penitentiary act, upon which this indictment was framed, the false assertion by the defendants, by which it is supposed they obtained the money, the notes or the check, is, we think, a false pretence within the meaning of that statute. At common law, indeed, the obtaining money by a mere lie, which common prudence could guard against, is not an indictable offence. Rex v. Wheatly, 2 Burrows, 1127; but that doctrine was not extended to cases under the English statute of 30 Geo. II. c. 24, against obtaining money, &c. "by false pretences." Young v. King, 3 Term R. 98, 100, 102, 103, &c. In that case the counsel for the defendants, in page 100, contended that the generality of the words "false pretences," does not extend the law to cases against which common caution may guard. But Lord Chief Justice Kenyon, in page 102, says, "Undoubtedly this indictment being founded on the statute of 30 Geo. II. c. 24, is different from a common-law indictment. When it passed, it was considered to extend

to every case where a party had obtained money by falsely representing himself to be in a situation in which he was not; or any occurrence that had not happened; to which persons of ordinary caution might give credit. The statute of 33 Hen. VIII. c. 1, requires a false seal or token to be used, in order to bring the person imposed upon into the confidence of the other; but that being found to be insufficient, the statute of 30 Geo. II. c. 24, introduced another offence, describing it in terms extremely general. It seems difficult to draw the line, and to say to what cases this statute shall extend; and therefore we must see whether each particular case, as it arises, comes within it. In the present case, four men came to the prosecutor, representing a case as about to take place; that William Lewis should go a certain distance within a limited time; that they had betted upon the event, and that they would probably win. He was, perhaps, too credulous, and gave confidence to them, and advanced his money; and afterwards the whole story proved to be an absolute fiction. Then the defendants, morally speaking, have been guilty of an offence. I admit that there are certain irregularities which are not the subject of criminal law; but when the criminal law happens to be auxiliary to the law of morality, I do not feel an inclination to explain it away. Now this offence is within the words of the act; for the defendants have, by false pretences, fraudulently contrived to obtain money from the prosecutor; and I see no reason why it should not be held to be within the meaning of the statute." In p. 103, Ashhurst, J., said "As to the first objection; cases which happened before the passing of the 30 Geo. II. c. 24, do not apply to this; for that statute created an offence which did not exist before, and I think it includes the present. The legislature saw that all men were not equally prudent; and this statute was passed to protect the weaker part of mankind. The words are very general; 'all persons who knowingly, by false pretences, shall obtain from any person money, goods, &c. with intent to cheat or defraud,' &c. and we have no power to restrain their operation." Buller, J., in page 104, is full to the same effect. He said, "The statute clearly extends to cases which were not the subject of indictment at common law. The ingredients of this offence are the obtaining money by false pretences, and with an intent to defraud. Barely asking for a sum of money is not sufficient; but some pretence must be used, and that pretence false; and the intent is necessary to constitute the crime. If the intent be made out, and the false pretence used in order to effect it, it brings the case within this statute;" and he cites a case in which the pretence was a bare lie, and the whole story a fiction; and in which the prisoner was convicted and condemned under the statute. It is true that those statutes were not extended in practice

to the state of Maryland, and were never in force in this county; but they were known to every lawyer in that state and in this county; and there can be no doubt that congress had them in view when they passed the penitentiary law for this district. It uses the same general terms, "false pretences," without any definition or explanation. The words of the statute are, "That every person, duly convicted of obtaining, by false pretences, any goods or chattels, money, banknote, promissory note, or other instrument in writing, for the payment or delivery of money or other valuable thing, shall be sentenced to suffer imprisonment and labor for a period not less than one year, nor more than five years." It does not, like the English statute of 30 Geo. II. c. 24, expressly require that it should be done, "with intent to cheat or defraud any person or persons, of the same," but as the penitentiary act seems to consider the offence of obtaining money by false pretences as an offence already well known; and as it was, and could be, only known as the offence created by the English statute of 30 Geo. II. c. 24, it seems reasonable that such an intent ought to be considered as constituting an essential ingredient in the offence named in the penitentiary law. We are, therefore, of opinion that the judge did not err in refusing to instruct the jury that the exhibition of Letty Clarke to the said Williams, accompanied by the false assertion that she was a slave, and willing to be sold, was not a false pretence.

8. The judge also refused to instruct the jury, "that Letty Clarke's own statements, as against her, were not competent proof of her freedom." If the word "proof" means evidence only, as we suppose it was intended to mean, the instruction was correctly refused; her voluntary confessions were competent evidence of that fact, as against her, in this cause.

9. The judge was therefore right also in refusing to instruct the jury, "that there was no evidence of the freedom of the said Letty Clarke."

10. And also in refusing to instruct the jury, "that the United States had failed to prove the false pretence alleged, by sufficient proof." Judgment reversed; and ordered to be arrested.